Case 1:09-cv-02630 Document 30 Filed 12/09/09 Page 1 of 10



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHAYNE A. SHINER, on behalf of himself and all others similarly situated, | )<br>)<br>) |
| Plaintiff, | ) No. 09 C 2630 |
| v. | )<br>) Honorable Charles R. Norgle |
| SELECT COMFORT CORPORATION, and SELECT COMFORT RETAIL CORP., | )<br>) |
| Defendants. | ) |

**OPINION AND ORDER**

Charles R. Norgle, District Judge

Plaintiff Shayne A. Shiner ("Shiner") initiated this case pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq. In support of his claims, he alleges that Select Comfort Corporation and Select Comfort Retail Corp. ("Defendants") violated the FLSA when Defendants failed to pay him and other store managers their overtime wages. Before the Court is Shiner's motion to send notice of the right to opt-in to all similarly situated individuals, otherwise known as a motion for approval of proposed collective action notice, pursuant to 29 U.S.C. § 216(b). For the following reasons, the motion is granted.

**I. BACKGROUND**

**A. FACTS**

The Court takes the following facts from Shiner's complaint and from his affidavit, which he submitted in support of his motion for approval to send notice. Defendants are in the business of selling mattresses and other bedding accessories. They operate approximately 449 retail stores nationwide and 21 stores in Illinois. Shiner worked as a store manager at the

Defendants' retail stores from May 2006 through February 2009, first in Bloomingdale, Illinois, then in Lombard, Illinois. According to Shiner, as a retail store manager his primary duty was to sell Defendants' products. In fact, he alleges that he spent approximately 88% to 90% of his work week selling Defendants' products, while he spent the remainder of his time taking part in other duties, which included "following corporate directives regarding merchandising, participat[ing] in off-store-location marketing events, preparing time schedule[s] for employees and writing disciplinary actions for sales associates." Pl.'s Decl. ¶ 10. His salary was approximately the same as a typical sales associate, which was $26,000 annually. Finally, according to Shiner, any important managerial decisions, such as hiring and firing, were made by Defendants' market managers.

Prior to April 2008, Defendants paid their store managers a higher salary, with a lower commission structure. This changed, however, on April 27, 2008, when Defendants instituted a company-wide policy to reduce the costs associated with employee overtime wages. This alleged company-wide policy required the Defendants' sales associates to work only 37.5 hours per week, while it lowered the base pay and increased the commission structure for the company's store managers. In turn, under the new policy, the company's store managers were required to work any additional hours necessary to avoid paying overtime to the company's sales associates. As a result, Shiner and other store managers worked in excess of forty hours per week, though Defendants did not pay them overtime.

**B. PROCEDURAL HISTORY**

Plaintiff filed his complaint on April 30, 2009. The complaint contains two counts, one alleging a violation of the FLSA and one alleging a violation of the Illinois Minimum Wage Law ("IMWL"), 820 ILL. COMP. STAT. 105/1 et seq. Currently Shiner seeks to send out a notice to

2

opt-in to all potential participants in this collective action, as allowed under § 216(b) of the FLSA. Defendants have filed their opposition to the notice, as well as a supplemental brief in support of their position. The motion to approve sending notice is fully-briefed and before the Court.

## II. DISCUSSION

### A. STANDARD OF DECISION

The FLSA requires covered employers to pay their employees overtime wages for hours worked in excess of forty hours in a single week. In the event the employer fails to pay overtime, the FLSA allows an employee to bring a "collective action" against its employer on behalf of itself and other similarly situated employees. 29 U.S.C. § 216(b); Harkins v. Riverboat Servs., Inc., 385 F.3d 1099, 1101 (7th Cir. 2004). Collective actions are somewhat similar to class actions under FED. R. CIV. P. 23, though they don't require the class participants to opt-out of the lawsuit; instead, to take part in a collective action, participants must affirmatively opt-in to the lawsuit by filing a written consent to join the suit. See Hoffman-LaRoche Inc. v. Sperling, 493 U.S. 165, 170 (1989); King v. G.E. Co., F.2d 617, 621 (7th Cir. 1992); Woods v. N.Y. Life Ins. Co., 686 F.2d 578, 580 (7th Cir. 1982). In light of this opt-in requirement, it is permissible for plaintiffs to send notice to potential class members, prior to discovery, to advise them of the lawsuit's existence, their right to join the suit and how to do so. Allen v. Marshall Field & Co., 93 F.R.D. 438, 441 (N.D. Ill. 1982). Whether to allow a plaintiff to send notice of the right to opt-in is within the discretion of the district court. See Biddings v. Lake County, No. 09 C 38, 2009 WL 2175584, at *2 (N.D. Ind. July 15, 2009) (citing Hoffmann-La Roche, Inc., 493 U.S. at 169).

The Seventh Circuit has determined that a district court may not prohibit a plaintiff from sending notice altogether. Woods, 686 F.2d at 580. Aside from this limitation, however, the Seventh Circuit is yet to articulate how the district court should exercise its discretion in the notice process under § 216(b). Gambo v. Lucent Technologies, Inc., No. 05 C 3701, 2005 WL 3542485, at *3 (N.D. Ill. Dec. 22, 2005); Persin v. Careerbuilder, LLC, No. 05 C 2347, 2005 WL 3159684, at *4 (N.D. Ill. Nov. 23, 2005) ("The Seventh Circuit has not articulated a standard to regulate a plaintiff's communication with other putative claimants via notice of the lawsuit"). District courts typically employ a two-step method to determine whether plaintiffs are "similarly-situated" to potential members of the collective action. Id.; see Hipp v. Liberty Nat'l Life Ins., 252 F.3d 1208, 1219 (11th Cir. 2001); Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1213-14 (5th Cir. 1995). This method ensures that the plaintiff intends to send notice only to those potential participants that are "similarly situated" to the plaintiff. See Flores v. Lifeway Foods, Inc., 289 F. Supp. 2d 1042, 1045 (N.D. Ill. 2003) (Norgle, J.).

Under the first step, in deciding whether the potential claimants are similarly situated to plaintiff, the Court assesses whether the plaintiff has made a "modest factual showing" sufficient to demonstrate that the plaintiff and the other potential claimants together were victims of a common policy or plan that violated the FLSA. Persin, 2005 WL 3159684, at *4; Taillon v. Kohler Rental Power, Inc., No. 02 C 8882, 2003 WL 2006593, at *1 (N.D. Ill. Apr. 29, 2003) (citing Realite v. Ark Rests, Corp., 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998)). This determination usually results in a "conditional certification" of the representative class participants. Persin, 2005 WL 3159684, at *1 (citing Mooney, 54 F.3d at 1214). In other words, once the plaintiff makes a "modest factual showing," the court may then, in its discretion, order that notice be provided to the potential participants. Flores, 289 F. Supp. 2d at 1045.

Under the second step, which occurs after discovery is complete, the court determines "whether the class should be restricted based on the similarly situated requirement." Id. At the second stage, the Court utilizes a more stringent review, and if the court determines that the proffered similarities are lacking, it may revoke the conditional certification that it previously granted. See, e.g., Olmsted v. Residential Plus Mortgage Corp., No. 08 C 142, 2008 WL 5157973, at *3 (N.D. Ill. Dec. 9, 2008).

With these principles in mind, the Court turns to Shiner's motion. Prior to doing so, the Court shall remind the parties that this Opinion and Order is restricted to the first step mentioned above, which simply requires the Court to determine whether Plaintiff has made a "modest factual showing" that Defendants subjected him and other similarly situated employees to a common policy that violated the FLSA. For now, the Court need not proceed past this first step.

### B. A "MODEST FACTUAL SHOWING"

Defendants contend in opposition to Shiner's motion that he failed to make a modest showing that he is similarly situated to other store managers because Shiner's description of his duties does not match the descriptions given by numerous other store managers. In support of this contention, Defendants attached to their supplemental memorandum eight affidavits from former and current store managers, thirty-four resumes from former store managers and nine resumes from former senior store managers. These submissions, say Defendants, contain job descriptions for store managers that differ substantially from those proposed by Shiner, and thus they demonstrate that Shiner's argument has no factual basis. Shiner disagrees.

In support of his motion, Shiner submitted, aside from his own affidavit, the affidavits of a current store manager named Chris Feliciano and a former store manager named Jeffery Eichenger. Like Shiner, these witnesses testified that their primary duty, as store managers, was

to sell the Defendants' products. They also testified that all other, major managerial decisions were made by market managers, not store managers. Finally, they testified that their duties were similar to those of other store managers who worked overtime pursuant to the Defendants' company-wide policy, but who didn't receive the appropriate compensation.

Based on these affidavits, and the testimony contained therein, Shiner insists that he has done enough to establish that he in the very least is similarly situated to many of Defendants' other store managers. According to Shiner, this is sufficient to get by the first hurdle in the Court's analysis, despite Defendants' argument to the contrary. Indeed, Shiner is right to say that to determine what an employee does, the Court must look to his actual day-to-day job activities, not the generic labels that the parties place on those duties. See Schaefer v. Ind. Mich. Power Co., 358 F.3d 394, 400 (6th Cir. 2004). Moreover, at this stage of the collective action process, the Court must accept as true Shiner's description of his own day-to-day duties, which two other store managers corroborated, even if those duties were somewhat belied by the job descriptions that Defendants presented. Again, the Court is merely focused on Shiner's burden to make a "modest factual showing," which, luckily for Shiner, is an undemanding burden to overcome. Russell v. Ill. Bell Tel. Co., 575 F. Supp. 2d 930, 933 (N.D. Ill. 2008) ("Courts use a 'lenient interpretation' of the term 'similarly situated' in determining whether a plaintiff [satisfies the first step]"); Olmstead, 2008 WL 5157973, at *3 (noting that at the conditional certification stage, plaintiff need only meet a "lower threshold"); Garcia v. Salamanca Group Ltd., No. 07 C 4665, 2008 WL 818532, at *4 (N.D. Ill. Mar. 24, 2008) ("The court notes, however, that at this first step of the two-step process, the plaintiff's burden is light . . ."); Garza v. Chi. Transit Auth., No. 00 C 0438, 2001 WL 503036, at *2 (N.D. Ill. May 8, 2001) (characterizing the first step in the similarly situated analysis as "less stringent").

6

Here, Shiner not only presented affidavits that allege his duties were similar to those of other store supervisors, but he also adduced evidence that Defendants had a company-wide policy that changed the pay structure for store managers, reduced the number of store hours that sales associates were allowed to work and required store managers to work any additional hours necessary to avoid paying overtime to the company's sales associates. As it turned out, this policy resulted in store supervisors working overtime hours. But, at the same time, Defendants failed to properly compensate them for those hours. Based on this proffer, the Court is satisfied that Shiner has made a modest factual showing sufficient to demonstrate that he has a basis for a claim that he and other similarly-situated store supervisors were victims of Defendants' common policy that violated the FLSA. See Kelly v. Bluegreen Corp., 256 F.R.D. 626, 629-30 (W.D. Wis. 2009) (differentiating several cases that denied conditional certification because, in those cases, none of the plaintiffs produced evidence of a company-wide policy); Biddings, 2009 WL 2175584, at *3 (finding plaintiff made modest factual showing based on two declarations). Defendants' arguments, which are not without merit, are more relevant to determining the ultimate scope, if any, of the collective action, an issue the Court will consider at step two. See, e.g., Persin, 2005 WL 3159684, at *3-4. Accordingly, the Court finds that Shiner has satisfied the first step of the inquiry, which completes the Court's analysis for all present purposes.

The Court notes, nevertheless, that while it takes no position as to the second step in the analysis, Shiner would be wise to re-evaluate the merits of his case going forward, given the substantial evidence that the Defendants produced to refute his current motion. Shiner may have satisfied the first step, which entails a relaxed inquiry, but there is no dispute that the inquiry becomes more stringent the second time around. Jirak v. Abbott Labs., Inc., 566 F. Supp. 2d 845, 847 (N.D. Ill. 2008) (explaining that the defendant may ask the court "to reevaluate the

conditional certification 'to determine whether there is sufficient similarity between the named and opt-in plaintiffs to allow the matter to proceed to trial on a collective basis.'"); Gambo, 2005 WL 3542485, at *4 ("The possibility of a fact-intensive inquiry into whether all members of the eventual opt-in class are in fact similarly-situated does not preclude authorizing notice . . . ."). The Court will revisit the issue at the close of discovery.

### C. ADEQUACY OF THE NOTICE

Defendants further request, should the Court allow Shiner to send notice, that the notice be modified in a variety of ways. First, Defendants seek to limit the scope of who receives notice, arguing that Shiner's proposed class members should be confined only to store managers in Illinois. In response, Shiner insists that Defendants imposed a national policy that affected all store managers, except those in California, and thus notice should be sent to all store managers nationwide. The problem with Shiner's argument is that nothing exists to corroborate his assertion. The affidavits that he submits are from store managers in Illinois. The affiants neither testify to a nationwide policy, nor do they testify to the duties and quotas of store managers outside of Illinois. As it stands, there is nothing to support Shiner's allegations that Defendants violated the FLSA on a nationwide basis. Shiner shall send notice, then, only to those store managers who worked in the state of Illinois.

Next, Defendants seek to limit the time period of their potential liability, asserting that the scope of the notice should be limited to the last two years, as opposed to three, because the record does not reflect a finding of "willful" violations. Section 225(a) of the FLSA provides for a three year limitations period for conduct related to willful violations of the FLSA. "Willful has been interpreted as knowing or showing reckless disregard for whether the conduct was prohibited by the FLSA." O'Brien v. Morse, No. 02 C 50026, 2002 WL 1290392, at *2 (N.D.

8

Ill. June 11, 2002) (citing McLaughlin v. Richard Shore Co., 486 U.S. 128, 133 (1988)). At this point, Shiner has alleged that Defendants knew that they were subject to the FLSA and that they were aware of their obligation to pay overtime wages. But, Shiner also alleges that Defendants skirted their obligation to pay overtime wages by instituting a company-wide policy that required their sales associates to work less hours, while changing the compensation structure and responsibilities for their store managers. These changes, as alleged, sought "to reduce [Defendants'] exposure to overtime wage costs by attempting to avoid paying its store managers overtime wages." Pl.'s Reply at 12. The Court finds that these allegations, supported by affidavits, imply the requisite amount of willfulness so that the proper statute of limitations is three years. See O'Brien, 2002 WL 1290392, at *2 (citing Bankston v. State of Ill., 60 F.3d 1249, 1254 (7th Cir. 1995)). Shiner is therefore allowed to send notice to potential class members that Defendants employed three years before he filed the complaint.

Finally, Defendants object to sending notice to senior store managers, or to store managers with different sales goals. Shiner, for the most part, does not object to these limitations, except to say that at this early stage, "it would be more prudent to include all store managers as similarly situated employees because it is apparent that all store managers are subject to the same corporate policies." The Court is inclined to agree with Shiner on this point, as the parties can likely revise the class participants and exclude those that don't belong as discovery progresses. See Pl.'s Resp. at 13-14 ("To the extent that senior store managers are not similarly situated, did not spend such a large percentage of their work time hours selling product, they can easily be excluded.").

In sum, Shiner's motion to send opt-in notice is granted. The proper scope of the notice is all store managers, past and present, who have been employed by Defendants in the last three

years in the State of Illinois. Defendant is to furnish Shiner with the names and addresses of persons within the scope of the notice on or before January 8, 2010. Shiner shall provide Defendants with a copy of the notice, for their approval, prior to sending out the notice. The Court urges the parties to work together to resolve any potential disputes that may arise with respect to the notice, outside the context of the instant motion. All potential plaintiffs are given 60 days to return their consent forms to opt-in to the litigation.

### III. CONCLUSION

For these reasons, Plaintiff Shayne A. Shiner's motion to send notice of the right to opt-in to all similarly situated individuals pursuant to 29 U.S.C. § 216(b) is granted, with instructions. IT IS SO ORDERED.

ENTER:

CHARLES R. NORGLE, Judge
United States District Court

DATED: 12-9-09